UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS WILLIAMS, | ) | Case No. 1:03 CV 1674 |
| | ) | |
| Plaintiff, | ) | Judge Solomon Oliver |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| JULIUS WILSON, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Curtis Williams (hereinafter Williams) is a prisoner in state custody following his January 11,

2001 conviction of felonious assault upon a peace officer which resulted in a near maximum sentence

of nine years of incarceration.  Williams appealed from this conviction and exhausted his state remedies

with respect to the grounds he now raises for federal habeas corpus review under 28 U.S.C. §2254.

See *State v. Williams*, 2002 WL 192335 (Ohio App. 8 Dist. Feb. 7, 2002), appeal dismissed, 96

Ohio St.3d 1466, 772 N.E.2d 1202 (Table 2002).  In his petition, Williams assumes that the district

court is a super court of appeals.  He more or less rehashes the same arguments he had presented to

the state courts without establishing that the state court decisions were "contrary to" or an

"unreasonable application of" clearly established federal law as required by §2254(d)(1) and (2).

The state appellate court decision, which is the decision in issue, began with factual findings

that on August 19, 2000, a dispatch call from the Cleveland Police Dept. summoned Officer Duke and

another officer to respond to a domestic violence situation.  Williams' mother and stepfather met the

1:03 CV 1674                                        2

police and pointed to the garage.  As the officers approached and identified themselves, the garage

door flew open and Williams stood there wielding a baseball bat.  After standoff while assistance was

summoned, Williams was subdued  and handcuffed after a struggle.  Williams was then transported

to the police station for booking. He appeared cooperative and his handcuffs were removed.  Once

they were removed, however, Williams  punched Officer Duke in the nose.  It was Officer Duke who

had approached Williams initially in the garage, and it was this officer who had also gotten close

enough to Williams to grab him so that other officers could subdue him.  The indictment did not involve

the altercation in the garage but solely the attack on Officer Duke at the police station.  Williams was

convicted following a jury trial of felonious assault under Ohio Revised Code §2903.11 with peace

officer specification.  Williams concedes in his traverse (p. 8) that the state appellate court "correctly

concluded that the evidence of assault was overwhelming, [but] the court failed to take into

consideration that the case was not clear-cut on the critical element of 'serious physical harm'

necessary to sustain a conviction for felonious assault."  Aside from this partial concession, Williams

does not argue to this court that there was insufficient evidence of serious physical harm to sustain the

felonious assault conviction.


        Williams raises three grounds in this habeas petition to this court.

                Ground one:     The trial court denied Mr. Williams his rights to due process
                                and trial by jury when it refused to allow a material witness
                                to testify for the defense, whose testimony would have given
                                the defense the ability to meaningfully and effectively argue
                                for verdict of guilt on the inferior offense of aggravated

1:03 CV 1674                                                  3

> assault, whose testimony would have enabled the defense to challenge the credibility of the prosecution's witness, and whose testimony was otherwise relevant in light of the evidence presented by the prosecution, all in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Williams contends the testimony of his mother should have been admitted into evidence. According to the proffer presented at trial, Ms. Williams would testify that Williams had not threatened anybody with a baseball bat, there had been no domestic violence call, that Williams was merely scared and not in an agitated state, that she heard him being struck and crying out in pain and she would corroborate evidence that Williams received treatment at Vincent Charity Hospital following this event. See *State v. Williams*, 2002 WL 192335 *3.

The heart of the dispute is whether Williams should have been convicted of aggravated assault under Ohio Revised Code §2903.12 which at that time was an offense of an inferior degree to felonious assault. Williams argues aggravated assault is in response to sudden passion or rage, "which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite [defendant] into using deadly force." *Id.*; see *State v. Jackson*, 81 Ohio App.3d 667, 612 N.E.2d 1302 (1992); *State v. Whitt*, 31 Ohio App.3d 92, 508 N.E.2d 1041 (1987).

At least 15 minutes had elapsed from the time Williams was subdued and brought to the police station for booking, which the state appellate court found was a sufficient time for "cooling off." Under

1:03 CV 1674                                        4

Ohio law, when there is sufficient time for cooling off, there is no longer reasonably sufficient provocation and the jury need not be instructed on the lesser offense of aggravated assault. *Williams*, 2002 WL 192335 *4, citing *State v. Huertas*, 51 Ohio St.3d 22, 31-32, 553 N.E.2d 1058 (1990); *State v. Pearce*, 64 Ohio St.2d 281, 18 Ohio Op.3rd 466, 414 N.E.2d 1038 (1980). Respondent counters that whether the provocation had spent its force because of a sufficient cooling off period is a question of fact for the jury citing *State v. Robinson*, 161 Ohio St. 213, 219 (1954).  The undersigned notes that submitting this decision totally to the jury appears to be inconsistent with *State v. Mack*, 82 Ohio St.3d 198, 694 N.E.2d 1328 (1998), which together with *Huertas,* allow a judicial determination to be made considering the issue of provocation and whether to instruct on aggravated assault.

This case, however, is before the federal district court on habeas corpus review and this review does not turn on resolving the application of state law and the question whether the state appellate court correctly applied state law.  See *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998), *cert. denied*, 525 U.S. 935 (1998); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

For purposes of federal collateral review, all claims adjudicated on their merits by state courts are reviewed under the standard set out in 28 U.S.C. §2254(d)(1) and (2).  A district court has very restricted Congressionally granted powers under this limited standard of review.  See

1:03 CV 1674                                          5

*Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d 389 (2000)*; Bell v.*

*Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).  The extent of permissible

federal review of state convictions is as follows:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable*
> *application* of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding
> (emphasis supplied).

The phrases "contrary to" and "unreasonable application" are not the same.  *Lockyer v.*

*Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).   Under the

"contrary to" standard of review, the state court's decision is "contrary to" clearly established federal

law when it "confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a result different from [this] precedent."  *Williams v.*

*Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Mitchell v. Esparza*, 540

U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).  Under those circumstances the Supreme

Court has held that the federal court on habeas review may grant the writ.  *Id.*   The phrase "clearly

established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court at the

1:03 CV 1674                                        6

time of the relevant state court decision.  *Lockyer*, 538 U.S. at 71-72, 123 S.Ct. at 1172; *Williams*

*v. Taylor*, 529 U.S. at 412; *Bell v. Cone*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing

legal rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of

the prisoner's case."  *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527,

2535,  156  L.Ed.2d  471  (2003).   This  includes  both  the  state  court's  refusal  to  extend  or  its

unreasonable extension of existing legal principles from Supreme Court precedent to new contexts.

See *Williams*, 529 U.S. at 407.

However, the U.S. Supreme Court has stated that a federal reviewing court may not find a

state court adjudication to be "unreasonable," "simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly."  *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389

(2000).  The unreasonable application of precedent must be "objectively" unreasonable.  *Id.,* 529

U.S. at 409, 120 S.Ct. at 1521.

Careful reading of the state appellate court's decision in this case reveals that the court gave

two reasons why it was not erroneous to exclude Ms. Williams' testimony.  First, that it was immaterial

in light of *Huertas*,  and  secondly  that  it  was  redundant  to  Williams'  own  testimony.   The  state

1:03 CV 1674                                    7

appellate court's finding that Ms. Williams' testimony was neither relevant nor material, is a debatable

point.  However even assuming that her testimony  may have been material and  relevant, it was not

*vital* since Williams himself testified at his trial (TR. 206-232).  From Williams' testimony the evidence

of police provocation was admitted into evidence as well as Williams' assertion that the police were

called to respond to a domestic violence incident.  E.g. TR. 209 (No domestic violence incident

occurring), TR. 211 (hysterical because he saw guns drawn), TR. 214-16 (officers rushed and

grabbed him and started punching him), TR. 216 (officer said he should have shot him), TR. 216-217

(officers joked about hitting Williams after he had arrived at the police station).


The Sixth Amendment right to compulsory process includes not only the right to subpoena

witnesses, but the right to present them in defense.  See *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct.

646, 98 L.Ed.2d 798 (1988); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 192, 18 L.Ed.2d 1019

(1967).  Mere deprivation of a witness alone though is insufficient to show violation.  To establish a

violation of this Sixth Amendment right requires a showing that the witness testimony "would have been

*relevant* and *material*, and....*vital* to the defense."  *Washington*, 388 U.S. at 16; *U.S. v.*

*Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).  Williams has

not shown that the exclusion of Ms. Williams' testimony was vital to his defense and he has not shown

that the state decision was "contrary to" or an "unreasonable application" of clearly established federal

law.

1:03 CV 1674                                   8

Moreover, as an evidentiary question, Wolf's arguments are subject to harmless error analysis assuming *in arguendo* that a violation of the Sixth Amendment had occurred.  See *Roy v. California*, 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996); *Calderon v. Coleman*, 525 U.S. 141, 145-45, 119 S.Ct. 500, 503, 142 L.Ed.2d 521 (1998).  The court must answer the question whether the deprivation of Ms. Williams' testimony posed a substantial and injurious effect or influence on the outcome of the trial.  See *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); *Roy*, 519 U.S. at 5, 117 S.Ct. at 338.   "[W]here a judge ... is in grave doubt as to the harmlessness of an error, the habeas petitioner must win."  *Roy*, 519 U.S. at 5, 117 S.Ct. at 338.  Grave doubt occurs when "in the judge's mind, the matter is so evenly balanced that [the judge] finds . . . virtual equipose as the harmlessness of the error."  *O'Neal*, 513 U.S. at 435, 115 S.Ct. at 994.  Given that Ms. Williams' testimony would have only been redundant, its exclusion did not have a substantial injurious affect on the outcome or influence on the outcome of the trial since evidence of provocation was presented.

> Ground Two:  The State of Ohio denied Mr. Williams his rights to due process and trial by jury when it engaged in improper closing argument designed to appeal to the passions and prejudice of the jury and which urged the jury to draw conclusions not based on the evidence at trial, all in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

1:03 CV 1674                                9

The prosecutor in closing argument referred to the recent murder of Officer Wayne Leon which had no connection to Williams or the charges against him.  Later the prosecutor implied that Williams may have been under the influence of drugs when he punched Officer Duke.  In reviewing this claim for plain error, the state appellate court concluded that these were both improper remarks but that Williams had failed to establish that the remarks prejudicially affected his substantial rights as required under state law due to the failure to contemporaneously object.  The state appellate court found Williams had waived all but plain error review of these claims.  *State v. Williams*, 2002 WL 192335 at *5.

The Sixth Circuit has ruled, specifically with regard to arguments of prosecutorial misconduct, upholding waiver of federal collateral review due to Ohio's contemporaneous objection rule notwithstanding the state court's discussion of the issue as a  matter of plain error.  See *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 1939 (2005); and see *Gulertekan v. Tilleman-Cooper*, 940 F.3d 415, 423-24 (6th Cir. 2003); *Mason v. Mitchell*, 320 F.3d 604, 636 (6th Cir. 2003); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  "[T]o obtain collateral [federal] relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his ... procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  *U.S. v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). In his traverse Williams has only noted that the state appellate court engaged in plain error analysis.  He provides no cause to explain the failure to object, nor does

1:03 CV 1674                              10

he persuasively explain how these two instances of prosecutor misconduct adversely affected the

jury's determination that Officer Duke was physically harmed after Williams punched him in the nose.

Accordingly, federal review of the issues presented under the second ground is barred.


Finally, there is no reprieve from this bar against federal review under actual innocence or a

miscarriage of justice because Williams admitted that he struck Officer Duke.  Compare, *Coleman*

*v. Thompson*, 501 U.S. 722, 750-51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Amadeo v. Zant*,

486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988); *White v. Schotten*, 201 F.3d 743,

753 (6th Cir. 2000); *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1997).

Consequently, federal collateral review of this defaulted claim is barred by procedural default which

is unexcused by "cause and prejudice."


Ground Three:    The trial court denied Mr. Williams federal due process
                 under the Fourteenth Amendment when, at sentencing: (a) in
                 contravention of both federal due process and state law, the
                 trial court considered prior conduct that did not result in
                 criminal convictions and was, in part, the subject of prior
                 acquittals; and (b) in violation of Ohio statutory and caselaw,
                 it imposed more than a minimum, and almost a maximum,
                 sentence upon a first-time offender without making the
                 findings required by State statute and without determining
                 whether the sentence being imposed was proportional to
                 those being received by similar offenders committing similar
                 crimes.

1:03 CV 1674                                        11

Although Williams did not receive the maximum sentence under Ohio law, he alleges that the

court violated Ohio law in meting out his sentence of nine years.  This ground was argued under state

law before the state appellate court, but for purposes of appeal to the Ohio Supreme Court, Williams

threw in a citation *Ford v. Wainwright*, 477 U.S. 399 (1996), adding federal due process requires

protections necessary to guarantee a state liberty interest.  The U.S. Supreme Court held in *Ford* that

the state of Florida was prohibited under the Fifth Amendment from enforcing its death penalty

sentence upon a prisoner who had been competent to stand trial, but later manifested mental

incompetency.  Williams, though, does not appear to be arguing that he is now a mental incompetent,

and he was not sentenced to be executed for the felonious assault conviction.


In the first subpart Williams contends that both federal and state laws were violated when the

trial court considered prior conduct that did not result in criminal convictions and criminal matters

which resulted in acquittals.  Williams is correct that this was cause for concern as a matter of state

law, and the state appellate court did voice this concern.  The state appellate court noted that the trial

judge read Williams' criminal record at sentencing which included all criminal citations whether or not

he stood convicted (TR. 312-314).  See *State v. Williams*, 2002 WL 192335 *8-9.  However, on

federal habeas corpus review, the district court lacks the jurisdiction to become a tribunal of state law.

See *Estelle v. McGuire*, 502 U.S. at 67-68; *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092,

111 L.Ed.2d 606 (1990) ("federal habeas corpus relief does not lie for errors of state law").

1:03 CV 1674                                    12


Respondent's response that Williams' is only challenging the application of Ohio law, though, fails to

completely answer the question posed by the first part of this ground.


The Supreme Court has stated there are due process rights in sentencing.  E.g. *Harris v. U.S.*,

536 U.S. 545, 566-67, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (sentence enhancement); *Nichols*

*v. U.S.*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (prior conviction); *McMillan v.*

*Pennsylvania*, 477 U.S. 79, 91-92, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)  (constitutional limits on

a state's power to identify acts as sentencing factors not subject to reasonable doubt standard); *Witte*

*v. U.S.*, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (affirming consideration of

uncharged cocaine importation in enhancing sentence for marijuana charges).  More recent Supreme

Court decisions, though, concerned a combination of due process and the Sixth Amendment right to

trial by jury.  E.g. *Jones v. U.S.*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)

(provisions of carjacking statute that established higher penalties when the offense resulted in serious

bodily injury or death); *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d

435 (2000) (other than the fact of prior conviction, any fact that increases penalty for crime beyond

prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt);

*Blakely v. Washington*, 542 U.S. - , 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (same).  Williams,

though, raised no Sixth Amendment claim in his initial state appeal nor in his argument appended to

his federal habeas petition.  Unlike the more recent decisions grounded upon the Sixth Amendment,

Williams is not challenging the lack of jury input in the sentencing process.  He merely contends that

1:03 CV 1674                                        13

the trial judge did not follow the state sentencing guideline scheme in applying Ohio Rev. Code §2929.14.

At sentencing the state trial court emphasized that Williams evidenced prior bad behavior in charges where he was found not guilty including assault on a police officer and aggravated burglary. Further, the trial court noted Williams had a prior altercation with his stepfather, where the stepfather received three stitches to his head and as a result Williams had been banished to live in the garage. These matters led the trial court to conclude that Williams was a person who was violent, who would continue to be violent towards his family, towards the police and that Williams expressed "absolutely positively" no remorse.  From this the trial court concluded a near maximum sentence was required for the protection of the public as well as the defendant.

Williams has not shown that the considerations used by the trial court in opting for the higher end of the sentencing range for the offense was contrary to or an unreasonable application of federal law. Williams will be disappointed to learn that as a matter of federal law, there is nothing unconstitutional in the trial court's discretion to consider uncharged or acquitted conduct as well as his life and characteristics.  See *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (court may rely on information that defendant had been involved in 30 unconvicted burglaries and considered defendant's life and characteristics).  *Nichols v. U.S.*, 511 U.S. 738, 745, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (court may consider past criminal behavior even if no conviction

1:03 CV 1674                                    14

resulted); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 573 n. 19, 166 S.Ct. 1589, 1598

n. 19 134 L.Ed.2d 809 (1996) (court may consider past criminal behavior which does not result in

a conviction).  Consequently with respect to the first subpart of the third ground, the trial court did not

deny Williams' due process under the Fourteenth Amendment.


In the second part of the third ground Williams argues that in violation of Ohio  law the trial

court imposed more than minimal and almost a maximum sentence on a first time offender without

making the findings required by state statute and without determining whether the sentence being

imposed was proportional to those being received by similar offenders committing similar crimes.

Courts, though, have generally declined collateral review of sentences that fall within the statutory

maximum.  See *Grant v. U.S.*, 72 F.3d 503, 506 (6th Cir. 1996); *Scott v. U.S.*, 997 F.2d 340, 343

(7th Cir. 1993); *U.S. v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001).


Williams' argument in this second part boils down simply to equating a violation of state

sentencing framework with a violation of due process.  Again federal habeas corpus relief does not

lie for errors of state law.  See *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29

(1984); *Lewis*, 497 U.S. at 780.  Rather federal habeas review of a state court's sentencing is limited

at most "to determining whether the state court's finding was so arbitrary or capricious as to constitute

an independent due process or Eighth Amendment violation."  *Lewis*, 497 U.S. at 780; *Richmond*

*v. Lewis*, 506 U.S. 40, 51, 113 S.Ct. 528, 536-37, 121 L.Ed.2d 411 (1992).  The undersigned

1:03 CV 1674                                    15

emphasizes that this is the maximum amount of judicial review that Williams could potentially receive

since both *Lewis* and *Richmond* were capital cases in contrast to Williams' nine-year penalty.


Williams has not attempted to establish an independent due process violation beyond the mere

assertion of sentencing error.  Additionally Williams' argument for proportionality also fails since

"federal courts will not engage in a proportionality analysis except in cases where the penalty imposed

is death or life in prison without possibility of parole.  *U.S. v. Thomas*, 49 F.3d 253, 261 (6th Cir.

1995).  That is because death and life imprisonment without parole fall under the "individualized

capital-sentencing doctrine" because there is a "quantitative difference" between death and all other

penalties.  *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); and see

*U.S. v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).  Accordingly, Williams has failed to establish a

state court decision that was "contrary to" or an "unreasonable application" of clearly established

federal law or was based on an unreasonable determination of the facts.


### CONCLUSION AND RECOMMENDATION

Following review of the petition and applicable law, petitioner has not demonstrated that he

is in custody pursuant to judgment of a State court which was the result of a decision that was contrary

to or involved the unreasonable application of Federal law as determined by the Supreme Court of

the United States or was the result of a decision based on an unreasonable determination of the facts

in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  There has

1:03 CV 1674                                          16


been no demonstrated need for an evidentiary hearing.  It is recommended that the petitioner's

application for habeas corpus be denied.


                                                    s/James S. Gallas
                                                United States Magistrate Judge



        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of

Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation.  See *U.S. v. Walters*, 638

F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).


August 18, 2005